JOHN C. ZALLÉE, Appellant, *v.* CONNECTICUT MUTUAL
LIFE INSURANCE COMPANY, Respondent.

### April 18, 1882.

In the absence of satisfactory proof of fraud or misrepresentation on the part
of the insurer, the insured who is guilty of laches in having accepted and
acted on the policy for years cannot have the policy changed to conform
to his recollection of the terms of the contract.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Affirmed.*

J. T. TATUM, for the appellant.

LEE & CHANDLER, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an action for a rescission of a contract of life in-
surance, and to recover the annual premiums paid by plain-
tiff to the insurance company. On hearing, the circuit
court dismissed the bill.

It appears from the evidence that plaintiff was, in 1867,
holder of a policy of life insurance in defendant's company,
to be absolutely void on failure to pay the annual premiums.
Plaintiff swears that the agent in St. Louis of defendant's
company then advised him to surrender the policy, which
was forfeitable, and to make application for one that was
non-forfeitable, on the non-forfeitable endowment plan ; that
the agent said that, after two years' payment, plaintiff
could then lose nothing, but that two years' payment had
to be made ; that he could get plaintiff such a policy from
the company ; that the policy was to be paid in twenty
years, if plaintiff lived ; but should plaintiff cease paying, he
was to get his *pro rata* share for every payment he had
made ; and his family were to get the $2,500 named in the
policy, if plaintiff died meantime. If plaintiff failed, after
two years, to pay the premium, he was to get a *pro rata*

for the amount he had paid; and the policy itself was to be non-forfeitable; and no conditions were mentioned at all. In April, 1867, the agent brought to plaintiff the policy in question in this action, saying at the time: "This is your non-forfeiting policy." Plaintiff saw, printed on the head of this policy, "Non-forfeiting endowment plan." Plaintiff says that he relied entirely upon the representations of the agent, and read only a few clauses in the policy; and that on the faith of the representations of the agent, and the words set out above, printed on the policy, he put it away in his safe without any further examination, believing that he had a policy absolutely non-forfeitable after two years' premiums had been paid. In June, 1875, plaintiff could not then pay the premiums then due, and gave to the agent his notes for the same, at thirty and sixty days. These notes were never paid; and, at the time of the trial, were still in the agent's hands. The agent was not authorized to receive notes for premiums. When the plaintiff handed these notes to the agent, he got no receipt for the premium. Always before that he got from the agent, on paying his premium, a receipt of the company; a printed form countersigned by the agent, which contained a statement that "the only evidence of the authority of any agent to receive any premiums on account of the policy, is a receipt in printed form signed by the president or secretary of the company." In 1876, plaintiff went into bankruptcy. He says, that it was in the January of that year that he first read this policy, which had been in his possession since 1867. In February, 1877, plaintiff handed the policy to the agent to be surrendered for a paid-up policy. The company refused to deliver such a policy, on the ground that the policy was forfeited according to its terms for non-payment of premiums. No premiums had been paid after the transaction in regard to the notes with the agent, in June, 1875. Hodges, who was agent of the company in St. Louis until

1874, testified that, owing to the lapse of time, he could not remember the conversation of which plaintiff spoke; but that he was quite certain that he had never spoken to plaintiff about obtaining from the company any policy in exchange for the forfeitable policy which he first had, except a non-forfeitable endowment policy such as the one which he delivered to plaintiff, being the policy in question here. This policy requires a surrender. This witness said, that he thought he remembered having seen a form of policy by the company which required no surrender; and, that such policies were, he believed, at one time, issued by the company; but that all endowment policies issued by the company, required a surrender and application to the company. It appears that the company never received from the agent the premiums of 1875, and knew nothing of the transaction about the notes, until written to by plaintiff, in June, 1877.

The policy in question is headed, " Non-forfeiting endowment." It is for $2,500, payable when the insured shall have attained sixty-five years, or within ninety days after proof of death; and contains a condition that, if, after the payment of the second annual premium, the policy shall cease by discontinuance of further payment, upon surrender of the policy within one year after the annual premium was due, " the company will issue a continuing or non-forfeiting policy therefor, for a *pro rata* amount of one-twenty-third of the insurance, to wit, for $108.70 for each and every premium paid hereon." The written application of plaintiff for insurance, upon which this policy was issued, is in evidence. It is an application for a policy on the endowment plan.

It is plain from this statement of the evidence, that plaintiff is not entitled to the relief which he demands, and that the circuit court properly dismissed his bill. There is no convincing evidence of any fraud or misrepresentation on the part of the agent of the company. If it be granted

that plaintiff, after the lapse of ten years, remembers distinctly what passed between himself and the agent, the most that can be said is, that the agent and plaintiff misunderstood one another. The agent meant one thing and the plaintiff another. Plaintiff got a policy that was non-forfeitable in a very true sense. By its terms he was so insured that, after the payment of premiums for two years, it did not lie in the power of the company to regard him as no longer insured with them. Certain reasonable formalities were, however, required by the company; these were expressly set forth in the policy itself, which the plaintiff retained for ten years without reading it. Every premium receipt that plaintiff took during the years that he remained insured, contained a warning that "by mutual agreement [see policy] the delay of payment of the premium beyond the day of the date of the policy makes void the insurance, and renders the policy invalid." The plaintff was guilty of the grossest laches, in reading neither his policy nor his receipt. The evidence is that he is a man of some education, whose language is English, though it is not his native tongue; and who has been in active business as a merchant in St. Louis, for more than thirty years. It was his plainest duty, when the policy was presented to him as the consummation of the previous talk between himself and the agent, to read it. After he had accepted it and acted on it for years, it is too late to apply to a court of equity for relief grounded upon his recollection of a conversation between himself and the agent of the company, the particulars of which that agent has, very naturally, forgotten.

If the plaintiff, on this evidence, could obtain a rescission of the contract and a return of his premiums, written agreements would be of little value. The case of *Hickey* v. *Drake* (47 Mo. 369), to which we are referred, does not at all resemble the present case, and is no precedent for the relief asked by plaintiff. That was a case of gross

intentional fraud, clearly proved. Hickey and Drake had agreed for a tract of timber land, the timber being the inducement to buy. Drake intentionally named section twenty-four in the deed, instead of section nineteen, which was the section that had the timber.. Drake kept up the delusion, congratulating Hickey upon the excellence of the timber. Hickey at once began to cut the timber, when he was stopped by the real owner, and he at once began proceedings to rescind the contract. The court decreed a rescission of the contract, and declares that the mistake of plaintiff as he made the contract, relying on the representation of defendant, was, under the circumstances of that case, a good ground for rescinding it. Both that case and the one at bar appear to be very plain cases — the one for rescinding a contract, and the other for refusing to do so.

The judgment is affirmed. Judge LEWIS concurs; Judge THOMPSON did not sit.